Good morning. Good morning, Your Honors. Matt Larson of the Federal Defender's Office for Mr. Munoz. Your Honors, when Mr. Munoz opposed extradition based on evidence that the accusations against him were procured by torture, the judge should have considered that evidence. This is because accusations procured by torture are not competent to generate probable cause, and the question whether probable cause exists is what an extradition hearing is all about. Now, the case law is clear that someone facing extradition can offer evidence regarding probable cause, and the case law is likewise clear that the judge must consider such evidence of probable cause. This Court explained in Barapin that inherent in the probable cause standard is the necessity of a determination that the evidence is both sufficiently reliable and of sufficient weight. As I understand it, in the record, below, both parties agreed that the evidence of torture is inextricably intertwined with the recantations of the prior statements. Is that true? I don't know that the parties agreed that every piece of evidence attesting to torture. There were a number of pieces of evidence attesting to torture. Mr. Rosas and Hurtado submitted a total of six statements attesting to the torture that they had experienced. And I don't believe that the defense stipulated that every single one of them was inextricably intertwined. Moreover, Your Honor ---- Kagan. I thought I saw it in the transcript, but I'll have to go back and look again. I will certainly refer to Your Honor's recollection of that. In a colloquy with the district court that she was trying to sort, the district court was trying to sort this out, and I thought the defense agreed that it was inextricably intertwined. So the analysis can then proceed from there. If it is inextricably intertwined, then what portion are you saying the magistrate judge should have looked at? I would like to address that, Your Honor. Judge Morrow said that the evidence of torture was, in her opinion, inextricably intertwined with evidence contradicting the charges against Mr. Munoz. And I have two points about this. The first is very simple. The first is that that's not so. Mr. Rosas and Mr. Hurtado did not deny Mr. Munoz's guilt. They simply denied their own involvement in the conspiracy to kidnap. But the second point I'd like to make is more important. The second point is that we need not invent the wheel here, because we've done this already. Exactly the same kinds of statements were at issue in Barrapin. I'll refer, Your Honors, to the district court's judgment in Barrapin, when the district judge was looking at the evidence there as to one of the charges that accused Mr. Barrapin of murder. There, the evidence was that his accomplice, again, like here, had made a statement inculpating Mr. Barrapin in a murder. And at the extradition hearing, Mr. Barrapin submitted affidavits from three different people attesting to the fact the accomplice had been tortured, but also attesting to the fact that the accomplice was not guilty. There was the same kind of intertwining there between evidence of torture and evidence denying the accomplice's guilt. The judge proceeded to consider those statements. He held an evidentiary hearing. He considered the evidence of torture. He considered whatever evidence India or the government of the United States was able to proffer, rebutting that, and he weighed the evidence. He said, a credibility determination can be made that evidence procured by torture of the accuser is not competent. He noted that India had offered no contrary evidence and concluded that it was more subjective to torture, and therefore that the judge was going to discount the allegation in the probable cause analysis. This Court then, in the panel opinion, endorsed that approach. The Court said where there was compelling and material evidence of fabrication, coercion, and torture, the judge appropriately found the totality of the evidence to be too unreliable to support probable cause. And then, of course, sitting on bunk, this Court endorsed that careful incident-by-incident analysis. This is simply the same process we're asking for here. We're asking for the judge to consider the evidence that the only two statements supporting extradition are the products of torture. Again, the finding is that these two statements are all that support extradition, and we have a wealth of evidence that is relatively contemporaneous, Your Honors. Mr. Hurtado, for example. Roberts. Before you go there, am I right that the recanting and the torture go hand in hand or are intertwined? There is obviously the case law reflects this. I think the briefs reflect this, that over time there's been difficulty in drawing this line between contradictory and between explanatory. And I think we don't have to go down and wade into that We're basically in the same situation that Mr. Barofsky is in, and I've just described it to the Court. We don't need to reinvent the wheel here. We don't have to start trying to set up a very concrete line between explanatory and contradictory evidence. Our point, Your Honor, is that we have to look at this statement and the recantations and how it was presented. And when the district court said, in this particular case, it is difficult if not impossible to distinguish between their statements regarding torture on the one hand and the recantation of the incriminating statements on the other, parsing the statements would almost certainly require the Court to determine whether the recantations were more reliable than the original inculpatory statements. That's an analysis that's particular to the recantations in this case. How do you respond to that? I respond, as I just have, Your Honor, that first we submit that that's not accurate, because what the judge called the recantations are simply denials by Mr. Rosas and Hurtado that they individually were involved in the plot. They do not exculpate Mr. Munoz. It's not Mr. Munoz coming in, giving a confession, and then saying and then taking it back and denying guilt. It's the same kind of evidence that the Court considered in Barapin, where the accomplice, the co-conspirator, was used to inculpate the defendant, but then evidence that the co-conspirator or the accomplice had been tortured was considered. Now, the judge said the government's position is that no weighing of evidence can ever happen, and that's simply not true. The case law in Barapin reflects this, and the Barapin panel said this explicitly, that inherent in the probable cause standard is the necessity of determination that the evidence is sufficiently reliable and of sufficient weight. We're not asking the Court to adjudicate whether Mr. Munoz is guilty of the kidnapping. We're simply asking the Court to consider the evidence that the only two allegations against him were procured by torture and, therefore, not competent evidence. But the Barapin court also said that, quote, the credibility of the recantation cannot be determined without a trial, end quote, which is not appropriate for an extradition hearing. It's a probable cause only standard. Yes, Your Honor. When the recantation concerns guilt, when the denial concerns guilt, if Mr. Munoz – in fact, Mr. Munoz made a statement that the government didn't rely on, but imagine Mr. Munoz made a statement inculpating himself, and then at the extradition hearing says, I recant that, I didn't say it, I'm not guilty, that goes to whether he's guilty. That's a question for trial. The question here is about the competence and the reliability of the evidence going to probable cause. There's no dispute here that evidence procured by torture is not competent to support probable cause to extradite someone. That's what we're trying to get out here. We're trying to get the magistrate to do his function of weighing the evidence and making a probable cause determination, not to decide whether Mr. Munoz is guilty or innocent of the kidnapping, but merely to decide whether the only two pieces of evidence offered to support his extradition are competent. What do I do, then, with the Barapin, quote, extradition courts do not weigh conflicting evidence in making their probable cause determinations, end quote? To the extent that that refers to probable cause, we submit it's a misstatement of law. The proper statement is that courts do not weigh conflicting evidence as to guilt of the alleged crime. Courts have to and must weigh conflicting evidence as to whether there is probable cause to extradite. The function here, the example that the magistrate gave below earlier in the case is, let's say you come, talking to the government lawyer, let's say you come to me, you're asking for a warrant, and it's based on this allegation made by a person, but there's this additional fact. The person making the allegation had a gun to his head when he made the allegation. Are you saying I have to ignore the fact that the person had a gun to his head? And the government's position is yes. You have to ignore the evidence that goes to the reliability of the accusation. You must consider only the accusation and close your eyes and plug up your ears to all other evidence that that accusation is not reliable. What's the difference between a reliability determination, as best as you can do it for me, and a factual dispute? What's the difference? It is a factual dispute, Your Honor. But the government's statement that no factual disputes can ever be worked out in an extradition hearing is simply wrong. And Barapin reflects this. The judge in Barapin had a factual dispute. The accomplice there who had made the allegation, there wasn't – there was evidence that he had been tortured. Now, India denied this, but didn't present any evidence to rebut it. The judge weighed the evidence of torture, found that it was credible, found that it was more likely than not that the person had been tortured, and therefore discounted that allegation. That's the kind of consideration we're asking for here. We're not saying ipso facto Mr. Rosas and Hurtado were tortured. We're not saying ipso facto Mr. Munoz is not guilty of the alleged crime. What we are saying is that the magistrate has to discharge his duty of making an independent probable cause determination. If the – your position, if there is a statement by a witness that says that he did this, and then a statement that says, no, I was wrong when I said that I recant what I said before, if it's a straight recantation, what your position is? I think that that would be different, Your Honor. I think what makes this case different is torture, is the fact that it's not just simply saying, oh, I didn't make the statement or I signed a blank piece of paper. It's that – Suppose that you could show he was threatened to make the recantation. Threat is, yes, certainly coercion, duress goes to reliability of the statement. Of course, here we don't even have to go that far. Here, it's relatively easy because all sides agree that torture has no place in our system of justice, and evidence procured by torture has no place in our system of justice. Now, the only two statements here that the judge found supported extradition we have, and the government has, in fact, submitted evidence saying that those two statements were tortured out of the defense. So are you saying that if somebody recants and basically says, well, I was under a lot of mental stress at the time, there were a lot of things going on within my family, and I wasn't in my right mind, that that straight recantation we can not consider, but then as it rises to the level of torture, that's when it then becomes relevant and we admit it in that instance? I think there is a spectrum, Your Honor. And the case law is clear that it's committed to the discretion of the magistrate in the extradition hearing to decide which evidence to consider in the probable cause mix and which not. Now, I would grant that there is a spectrum. Our position is that we don't have to parse where on the spectrum this obligation to consider kicks in because we've already been here. You're already on one end of the spectrum. All right. We've already done this in Barrapin. This is materially indistinguishable from Barrapin. And the judge there considered the evidence, and that is all we're asking for here, simple consideration of the evidence. All right. Our questioning actually took you two minutes over your time, but I thank you for your argument. Let's hear from the government. And after you state your name, perhaps you can distinguish Barrapin for us. Good morning, Your Honors. May it please the Court. Aaron Ketchel on behalf of the United States. Your Honors, appellant relies solely on dicta in Barrapin, and, in fact, when Judge Barrapin, the issue up on Barrapin was whether statements that were relied upon for sufficiency of probable cause were, in fact, sufficient to establish probable cause. The Barrapin Court on Appeal did not consider whether the extradition judge properly or improperly admitted disputed evidence. The only holding in Barrapin is that the evidence that was submitted and was relied upon was sufficient to establish probable cause. The government contends that the extradition judge erred in admitting disputed evidence. And, in fact, that error is reflected in two ways. One, the very specific holding in Barrapin. And, of course, as Judge Yukari noted, Barrapin, the en banc panel in Barrapin said extradition courts do not weigh conflicting evidence in making their probable cause determinations. The issue of whether there was torture was conflicting evidence and was disputed by the Indian government. But the record in Barrapin actually reflects the danger in pursuing the rule appellant voices here. As appellant noted, in Barrapin, the extradition judge heard an allegation of torture, admitted an allegation of torture into evidence, and then invited the Indian government to respond to that allegation of torture. Of course, requiring a foreign government to respond to a factual dispute in an extradition matter is precisely what the Supreme Court has instructed we must not do repeatedly. And, as my colleague noted, when India did not respond, which is, of course, its prerogative not to have to respond in an extradition matter, the extradition judge effectively held India in default judgment for not providing evidence in rebuttal and, therefore, held that the torture evidence indicated that there was a lack of probable cause. But those counts for which the extradition judge felt that there was not the probable cause was lacking were not on appeal. India did not challenge those findings. The only thing on appeal and the only holding that is relevant in this case is the fact that the courts cannot weigh conflicting evidence. I'd also like to briefly address the question that Judge Nguyen posted – posed about the party's concession in argument. And Judge Nguyen was correct that at oral argument in front of the habeas judge, the fugitive conceded that the recantation was inextricably intertwined. This is at ER 15. And it reads, at oral argument, the court suggested that it might be possible to distinguish between torture evidence and recantation evidence outlined above. While the parties did not argue that drawing such a line would be impossible in every case, they agreed that drawing such a line in this case would be impossible. Therefore, to the extent that the appellant now concedes that recantation evidence must be excluded and concedes that the allegations of torture here are inextricably intertwined with that recantation evidence, it is clear that the lower court's holding must be affirmed. Kagan. I understand the words, but I'm having a little trouble understanding what the – what the – what the evidence behind them is. What is the – what is – when the district court is talking about recantation evidence, what is it talking about? Well, effectively, Hurtado and Rosas, in alleging that they were tortured, allege that their initial statements were coerced and, therefore, abandoned those initial statements. This is – this is exactly the type of recantation evidence that the Ninth Circuit has been skeptical of in many other cases. And certainly, courts have struggled in applying the terms contradictory and explanatory evidence across many cases, but that is because in the abstract, those terms can have many different meanings. But the Supreme Court has made clear and provided a guiding principle in extradition matters, and that is any fact-finding must occur where the evidence and witnesses are located, that is, in the foreign country, not in the United States. In other words, if the – if the fugitive proffers a disputed evidence in an extradition proceeding, the extradition judge must find that that evidence is contradictory and exclude it. Okay. But I'm still not getting the other half of my question, which was the recantation evidence was that it wasn't right, and the torture evidence was because – because I was tortured, because it was the product of torture. That was the allegation that they – that Rosas and Hurtado claimed that they had been tortured. Which is – Is there any situation when torture evidence would not also be recantation evidence? It's difficult for me to think of an example of when that might be the case. Me, too. And I also think it's important that while my colleague acknowledged or stated that there would be a spectrum of cases, it is the government's position that there would be a spectrum of cases in which the government would either say, oh, duress, oh, coercion, or reliance on a false statement, or, in general, impeachment. These are all ways in which to attack the credibility of a particular piece of evidence. And it is clear that in a particular – in the extradition context, where the U.S. Court's role is limited by statute to begin with, and the Supreme Court's role to begin with, in those cases, we cannot consider those types of factual disputes about the credibility of any particular witness's statement. I would also just note that, setting aside the question of competent versus explanatory evidence, we argue that this appeal could be resolved without actually addressing what evidence must be admissible. And that is because the fugitive's sole argument in this case is that the extradition judge improperly excluded certain evidence. And what the Supreme Court has said is that in summary proceedings, like an extradition proceeding, the exclusion of evidence is not a cognizable habeas claim. And that is – that was stated initially in Galt, where the Supreme Court said, on a summary proceeding like this, even if the exclusion was wrong, it could not be enough to cause a matter of removal. And that language was echoed in Collins and Charleston – or, excuse me, Charleston. Because appellant's sole basis for challenging his extradition here is that evidence was improperly excluded, we would argue that that is not a cognizable habeas claim. But if that affects a probable cause finding, how could it not be a relevant factor? Well, I think in part what's animating the Supreme Court's holdings there is the case where, in fact, an appellant has no right to put on evidence that contradicts the finding of probable cause. So if an extradition judge finds that there is evidence to support probable cause, that in a unique circumstance of an extradition proceeding and where evidence cannot be put on to contradict that evidence, that it is inappropriate for a court to reverse that on a habeas – on a habeas proceeding. Now, here the appeal really centers around the two statements, which, as the district court points out, it's hard to say they're not direct recantations of or disavowal of the prior statements. But the government's position isn't that you can't consider torture at all in other circumstances, is it? If you have, for example, medical documents or other types of evidentiary documents, would the magistrate judge be in error by failing to consider those types of evidence? I think what we would argue, Your Honor, is that if it is a – if it is an issue in dispute, if it is disputed evidence that is – that is – requires a factual finding in order to weigh the reliability or credibility, then in the unique circumstance where, after the extradition court had found a fugitive to be extraditable, the Indian court, which was the foreign court seeking or foreign country seeking extradition, found that – and I'll quote – that the evidence relied upon was not voluntary and not true. Because the foreign court found that the extradition court had made a determination that the evidence relied upon was not voluntarily and not true, the habeas court in the U.S., where there was no dispute anymore as to whether that had occurred, remanded back to the extradition judge to consider the evidence anew given that finding. I would simply note, again, Your Honor, that the rule proffered by the fugitive here is a slippery slope in that it would require any extradition judge to weigh any allegations of duress, coercion, any type of impeachment evidence, and would effectively cause the extradition process not only to grind to a halt, but threaten the ability of the United States to extradite citizens back to the United – extradite criminals back to the United States, because under principles of comedy, foreign countries would certainly likely reply, respond as the U.S. did – excuse me, as the U.S. – respond to the U.S. in kind. And with that, I'll submit, Your Honor. Thank you. All right. You're out of time, but let's put a minute on the clock for you to respond. See how fast you can talk. Go. Your Honors, please consider the government's position in this case. The government wants to make a rubber stamp out of an extradition magistrate. That's not what the law is. The government says any dispute, any disagreement has to be ignored. Only the allegation has to be credited as true, regardless of whether there's evidence of torture. That totally undercuts the reliability of the allegation. That is not the law, and no court has done that. This court has never endorsed that approach, Your Honors. And why? Because it makes impotent and a rubber stamp out of the magistrate judge. Consider and accept as true only the allegation and completely ignore, close your eyes, and plug up your ears to evidence that the allegation was tortured out of the declarant. That is not how a magistrate functions in this country. No, I understand that's already a slippery slope, because what's explanatory versus contradictory? You know, it's fuzzy. It's all fact-dependent, and we appreciate that. We are not trying – our position is that we don't want to slide down the slope. But we don't want to have a mini-trial on whether Mr. Munoz is guilty of the kidnapping, because the law is clear that that can't happen in the extradition proceeding. What is the question in an extradition hearing? It's whether there's probable cause to believe that he committed the charged offense. Right. But just one – let me try this one more time so I got this. If the – if the declarant says later, I made that statement because my family was threatened and I had no choice, that is admissible or not? I would argue if I represented that client that it would be admissible, Your Honor. But that's not the argument I'm making today. The argument I'm making today is an easier one because of the nature of the evidence at issue in this case. The evidence is not that my family was threatened. It was that they beat me until I made this allegation. They waterboarded me until I made this allegation.  They did the same thing to your family. It would be different. If I represented that person, I would make that argument, Your Honor. Yes. I understand that. I appreciate the Court's concern with line drawing here, and that's why I was trying to get across earlier that we've already been down this road before. The Court, the magistrate and barrappin did this already. He considered evidence of torture, and then this Court, sitting as a panel, said that when there was compelling evidence of torture, he appropriately found that the evidence of probable cause was lacking. Appropriately found, Your Honor, because in our system of justice, we do not ignore evidence of torture. We consider that evidence. Now, it may not be credible in the end. The magistrate may decide that Mr. Munoz's evidence is not credible and, therefore, certify his extradition. That's happened in other cases, Your Honor, cited in our briefs, where the judge considered the evidence and found it lacking. But here, we didn't even get that far. The judge simply closed his eyes, and we submit that's legal error. We've got your argument in hand. Thank you very much. It's a tricky issue, and I appreciate both sides for their arguments. The matter is submitted for decision by court. The next two matters, U.S. v. Elizalde-Ortiz and U.S. v. Avila-Perez, have been submitted.
judges: Zouhary, Schroeder, Nguyen